The next case we're going to hear is Seay v. Cannon and Mr. Luck, whenever you're ready, we'll hear from you. May it please the court, my name is Jason Luck and I, along with Sarah Turner, both represent Broderick Seay, who's currently incarcerated. We come here today to present to you what I think is a pretty clear-cut case that requires the strictest scrutiny analysis under Arizona v. Washington, in that we have a prosecutor, we call solicitors in South Carolina, we have a prosecutor who proceeded to trial, aware that a critical witness was not going to be available, and that mistrial was granted based on the unavailability. The district court found that the prosecutor was surprised. Correct. Surprise is the key. And so that is, you have to argue that's clear error? Your Honor, it's, I don't have to argue that's clear error, we... No, the whole issue may not be, but that fact, in other words, the Supreme Court has said if you proceed to a trial aware, is the word they used, aware that a witness will not show, you're taking the risk, you're taking the chance. Correct. And that's the prosecutor's problem. But if the prosecutor goes to trial and is surprised, he's, in that finding, he's inherently not aware. So the question is, the district court found that the prosecutor was surprised in this case based on the facts, and I think on that one particular issue, whether he was surprised or was aware that the court made a finding that he was surprised. Correct, Your Honor. I think the entire appeal really hinges on the issue of surprise and awareness. But I could ask you to follow up in answering Judge Niemeyer's question. Does the issue of surprise kick in when the jury's empaneled and jeopardy attaches, or does the issue of surprise, is it measured from the moment the parties approach the bench, excuse me, approach the court and the case begins? You see what I'm saying? Because it seems to me that the surprise happened on the Monday when the case commenced, but the jury was empaneled a day after that. So when does the surprise in the surprise finding of the district court kick in? In other words, does it relate to the first day, which was what, Monday, July 25th, or was it the day the jury was empaneled? Your Honor, I would believe it would be when the date the jury was empaneled, in that there was the surprise. If there was a surprise on Monday, the day before the jury was empaneled, keep in mind there was also a day before that that the prosecution was aware that she had effectively gone incommunicado. So we have two days there. There may be where the surprise begins, but those were two days before empanelment of the jury where the prosecution could have taken some measure to find their witness. Keep in mind that the subpoena that was issued in this case commanded this key witness to appear on the 25th, the day before the jury was empaneled. The court relied on the fact that there was a subpoena, number one. Number two, they had spoken with the witness, Grant, in person on Friday. They spoke to Grant on Saturday, and everything was go. And then when it came time to call Mrs. Grant, she had not appeared. She didn't appear on Monday, but the subpoena was for the week. And she had not appeared on Monday. They then went out to see if something had happened, but they did not expect she would not show. I think if I were the lawyer, I probably would expect maybe she got sick or had a child or had to go to an emergency room or something like this. And they went out to look for her and continued. And when it came time to call her, she was not available. They then sent out the marshals. Couldn't find her. And the court says in that circumstance, their expectation was surprised. Well, Your Honor, it's a little more complicated than that. And that's why we look at the record here. We look and we see what did the prosecution know before this case was tried or before the jury was empaneled. And part of that is mentioned. It's in the joint appendix, page 440 and 441. The prosecution knew before this trial started, because of a prior trial with the same witness, that this witness needed, for lack of a better word, a little persuasion. The first trial, she testified, and again, this is page 440, 441. She was under indictment for obstruction of justice. And the solicitor concedes that this is one. Well, they knew. I don't mean to interrupt, but they knew she was a reluctant witness. Correct. Okay. Does that equal surprise? And if not, why not? In other words, they knew. It seems to me that that's not enough. A reluctant witness may not equal surprise. But it certainly is a component of surprise, isn't it? It is, Your Honor. But a reluctant witness is a reluctant critical witness. Let's not forget that this supposedly is a witness that is critical to the prosecution. And so there should be a certain amount of care you use with your keystone witnesses. Is there any issue about the care? I mean, they did issue a subpoena. They did stay in touch with her. It seems to me the question under Dunham is whether that is a strictly applied. In other words, if you have a missing witness that you have some awareness of being missing or may not come before the jury and panel, does that strictly mean double jeopardy applies? Because if you look at whether the prosecution's conduct, they were more involved with this witness, certainly, than it appears the prosecution wasn't done. Or Dunham, I may be saying that right. Are you saying Dunham is the end of our inquiry? Is that what controls the case? Dunham is the start in that. That is the strictest scrutiny argument there. Well, they don't say that word there. That comes up in Arizona. And we have no law in the Fourth Circuit that says what that means. So maybe you know what that means. Maybe you have a position as to what that means. And if you do, I'd like to hear it. When I look at the cases of Baum and Gilliam, which are two Fourth Circuit cases that do interpret Arizona v. Washington, it becomes a little difficult to describe what is strictest scrutiny. But it seems to key in on the knowledge, the awareness of the prosecution. And this is what I'm going to come back to over and over again, in that the prosecution. Well, it does. But, you know, that is shorthand for the overall doctrine. I mean, the idea is the prosecutor gets one full chance to prosecute. And if he goes into a trial and sees things going bad and then asks for a mistrial, he doesn't get that full chance because he is now playing game in the system. So there has got to be a culpability on the prosecutor. And the lines being drawn by Dunham and Arizona are efforts to engage whether the prosecutor is gaming the system or is trying to have one full, fair chance to prosecute. And in this case, we have a very serious prosecution. We have a murder prosecution. We have the big public interest in having a trial, at least one trial, to determine whether he's guilty or not. And we have the prosecutor that has this witness that's fragile in terms of appearance, as you point out, issues a subpoena, talks to her in person the last day before trial, calls her on Saturday, and then begins the trial. And she's not there. And sure, there's some delay, but they're trying to find out what's causing it. And they finally determine she's gone. Now, that doesn't seem like a culpable prosecutor gaming the system and saying what we're doing is we're applying the most technical line drawing in order to deny the prosecution, the public prosecution of this case. And I must say, it doesn't sound to me like the prosecutor was taking a chance. That's what Dunham talks about. You've got to be aware that you don't have the witness, but you're taking a chance, and you begin the trial. And Arizona uses the word aware. That's the key word. But that is a shorthand for saying the prosecutor assumed the risk in trying a case knowing he wouldn't have the witness. Here, they didn't know they didn't have the witness. There was something going on, and they tried to find out. But they didn't know they didn't have a witness until probably the second day of trial. Well, Your Honor, they had a subpoena that commanded her to appear the first day of trial. She did not appear the first day of trial. At that point, in my opinion, the prosecution should have sought a bench warrant. If this is truly a critical prosecution witness, this witness needs to be retrieved. Well, that brings me back to my point is your argument is not without merit and substance. You make an argument, and this was made to the district court, and the district court senses it all as talking with counsels, both sides. And the court said, I find that the prosecution was surprised in this case. And we all know it's a key witness. Both sides agree it's a key witness. So it's a question of surprise. And while I don't think you're without argument. That's why you're here, and I think it's a good argument. But the other side of the coin is we would have to say the court was clearly erroneous in making that factual finding of what was occurring for it at the course of this beginning of this trial. So you're saying that the court was clearly erroneous if surprise is measured by the time the jury was in panel? Correct, Your Honor, and in other ways. I can move on to those while I still have a little bit of time that might be worth mentioning to you. But we talk about also, if you look at the Bowne case, about how when considering mistrial, a court must entertain extensive, that's a quote, extensive argument on the appropriateness of mistrial. It must give it appropriate consideration of alternatives. What we have here, and this is in the briefs and it's laid out, there is no evidence taken in consideration of whether to grant a mistrial or not. There is no testimony taken, no paper evidence, no documentary evidence is entered. No evidence whatsoever is considered by the judge. Well, I thought the marshals went out to try to find the woman and came back and said they couldn't find her. That was statements of counsel. There was no witness. But, I mean, that's before the court. We're not supposing the prosecutor lied about that, are we? No, Your Honor. There was a marshals task force that was involved with that, but that's not in the record. I'm sorry, Judge Ingram. I understand the argument about surprise being on Monday versus Tuesday. I think that's the argument that we need perhaps to look at. I mean, it looks like this judge, maybe it's not all cleared out in the record. Arizona tells us we're entitled to look beyond the specific findings of the court. I mean, the trial judge addressed the situation on Wednesday, granted a one-day continuance, issued a bench warrant. I mean, they start at 10. There's some indication. I don't see that he acted irresponsibly in the way some of the cases talk about. It seems to me it's a question of does he have to lay out alternatives and consider them, which admittedly he didn't. And can the prosecution claim surprise if they know on Monday and Tuesday morning before the panel and the jury that there's a potential problem with the witness? Your Honor, you actually raise a really good point. When you mention or you see that, the judge did not consider the alternatives, and we have the district court actually identifying two alternatives. The only alternative really is a postponement, right? That's the best alternative. Yeah, but if you have a report that the marshals went out and tried to find the person and their own staff went out for the days prior trying to find her, then the question of postponement ends up delaying. And the question is she could be gone, she could be killed. We're talking about snitching stuff in this case, right? Your Honor, you're right. Now, that allegation was made during the hearing, but that was walked back later, and that was very inappropriate. The solicitor should have never brought that up. And if you look, if we go back to page 440, 441 in the index, that allegation of danger was walked back, but at the time that was never, it was walked back at a later hearing. But at the time that was brought to the judge's attention, there was no walking back. Can I ask you a more fundamental question? It's really not been briefed, but this is a state trial that is about to begin, and we have a federal court jumping in and saying one way or the other that we should stop the state trial because of double jeopardy. Why shouldn't the state court apply the double jeopardy doctrine and decide what to do and have it appealed up to the Supreme Court and have us consider it only later under 2254? I would love to do that, Your Honor, but this is an interlocutory order, and in South Carolina it's not immediately appealable. So we would have to try him a second time, which would, that in and of itself, is a violation of his double jeopardy rights. I wish that we were like Georgia. There's a case cited by the state in Georgia where apparently an order granting a mistrial is immediately appealable. We don't have that luxury in South Carolina, and we do have a case, I believe it's cited by the district court, that allows us to, in order to preserve a defendant's double jeopardy protections, go collaterally to the federal courts as we've done today. Does that answer your question? It answers it. It's not an appealing relationship between the feds and the states. When you come back, I know you have some more time. I think I interrupted you after asking your question, which I apologize for, but I'd like to hear you articulate what you believe the strictest scrutiny means for us, acknowledging that's not clearly the case. Not now. We want to hear it from the other side, but when you come back. I think it's a relatively simple, it could be relatively simple, at least what I've distilled from some of the cases, and even from some of the arguments made by the state. I think it requires this court to look under the hood a little bit. It's not just that a witness is missing. Why is that witness missing? Look at the why, and in looking at that why, you've got to look not just at what is said by the prosecution, but what has been done. And so we have what is said by the prosecution, which is the word surprise. I didn't count how many times surprise and unprecedented appears in this. What is said is surprise, surprise. But if you look at the acts, I don't see that. I see, for lack of a better word, an error on the part of the solicitor's office. I think we've got your position. Sorry, Your Honor, I see my time's up. Yeah, yeah. You've got some time on rebuttal, and you can respond further also to Judge Mottlebaum's question. Thank you. All right, now am I supposed to hear Ms. Turner? Yes, Your Honor. Ms. Turner can speak more to more trial-related issues, so very briefly. Not too many issues for one minute. Your Honor, may I please report? I was present on July 25th, 2016 at the beginning of the trial. I was also present on July 28th, 2016 when this trial was granted. Your Honor, the surprise matter that's been talked about at great length at this point, we would suggest that there was not a bench warrant that was issued until a later time, and that as soon as the prosecution knew that there were issues with contacting that witness, which began from the solicitor's office, they've actually stated and conceded that they tried contacting her throughout the entire week of the trial. So our position would be that a subpoena should have been issued,  Thank you. Thank you. All right, Ms. Brown. Thank you, Your Honor. May it please the Court, I represent the Respondent Sheriff Al Cannon from Charleston, South Carolina. Mr. C is seeking to prohibit the state of South Carolina from charging and trying him for murder, a very serious offense, and he's presented a great many arguments, both legally and factually, on why double jeopardy should bar that retrial. But the critical question remains, it's always been focused in error, and it remains, does the state court record support the trial judge's finding of manifest necessity? Now, I would offer to the Court that a lot of the disconnect between the arguments and the briefs that you have before you and the arguments that you are hearing today go back to the structure. What structure should we be using? What is the framework that we should be using? And what facts do we take from the record and place in that framework to consider? Now, Mr. C advocates a bright-line test, that if the witness isn't there and the jury's been sworn, that's it, double jeopardy, no retrial. I don't think that's fair. His position is that you were aware that she wasn't going to show because she was required to show on Monday, and you were aware and you went ahead with the trial. That's their position. Well, his position is, I say it's more mechanical than that because we haven't looked at it. Some of the questions this morning have been about... If you heard the argument this morning, then his brief parallels that. The argument is that you were aware, under the Arizona terminology, you were aware that she was not available and proceeded with trial. You took the chance, as the word used in the Dunham opinion, and assumed the risk. And therefore, double jeopardy should attach and the district court heard. I thought your argument should be a little bit where we pose the questions that you were not aware that she wouldn't show. She had shown on Monday, but that did not convince you that she wouldn't show. You didn't know she wouldn't show until you made your efforts to go find her, and then the marshal went out. But that's got to be your argument, and the district court found that you were, in fact, surprised. But you have to jettison the notion that he argues that you were aware that the witness wouldn't show because of various circumstances. Well, you had a pretty good idea, didn't you, when the witness didn't come on Monday and the witness didn't come on Tuesday. Two days in a row, the witness violated the subpoena. How is that not notice that you've got a problem with your witness? And if the court would allow me to synthesize these positions, and this is... Now, if you could answer the question, how is that not notice that you had a problem with your witness clearly before the jury was sworn? Because you have to look at all the details. Well, no, if you just answer the question... You have to look at all the details. And if you would go with me and tease these facts out, tease these facts out, because the suggestion is the witness should have been in the courtroom on Monday morning. Visually, we could have seen that witness. That's the suggestion. No, the suggestion is whether or not... I'm sorry to interrupt you. Oh, that's okay. The question we're trying to answer is I don't think what you just said. I think it's whether you can... How can you say you're surprised given the information that you have a subpoena that says show up on Monday? The witness isn't there on Monday. The witness isn't there on Tuesday. And you actually have knowledge or concerns before that. How do you then claim you're surprised? That's another good point. We didn't have knowledge or concern before that. You had indication the witness was scared to some extent, correct? That's in the record, I thought. No, sir. No, sir, and that's what I'm trying to get at. It's not as easy as saying Monday, this is what happened. Well, make your point. Absolutely, Your Honor. If we will look at the order from Judge Cooper on page 421 and 422 of the joint appendix, the judge is finding the state has been caught by surprise. I have no reason to believe the state concocted this factual situation. And what he's done is he takes information both from the state and from the defense. What information has he relied on? That both have pointed out that the witness was available and had been talked to from Friday, Saturday, and Sunday. The defense talking to her on Sunday. The state having expressed that they talked to her Friday and that she was going to be on board. And this is my point about Monday. If you had laid eyes on Ms. Grant on Monday, that is no guarantee that she would have been there Wednesday when she was caught. And that's why you don't impanel the jury until you know you have a witness, a key witness. Frankly, you know, I have to say I'm just astonished, and I've been a prosecutor, astonished that the state would proceed in a murder trial to impanel a jury when it knew that the key witness had violated the terms of the subpoena for not one but two days in a row. How do you call that manifest necessity when the state elects to roll the dice and go to track? Well, Your Honor, I think we can agree that she wouldn't have been taken into custody on Monday. She wouldn't have been taken into custody. No, I'm talking about surprise. And how can you say that the state elected, knew it had a problem, if the witness was not honoring the subpoena, but elected to place the defendant in jeopardy and have the jury sworn? To me, it's just astonishing that the state would have taken that kind of a risk. It seems to me the height of your responsibility to take that kind of a risk for the citizens of North Carolina who should have had a fair trial along with the defendant, and then they take that risk, and then they just, knowing that the witness might not show, they impanel the jury, and then they claim that it was necessary to have a mistrial. The record supports and Judge Cooper accepted that there had never been a problem with the witness coming when called before. That she had been to the solicitor's office, that they had talked to her, that she had cooperated fully in the Howard trial, that she had given testimony in that trial, that she had spoken to the defense, she had been in Charleston, and was available when she was going to be called Wednesday. They had no indication she would not come to the courthouse. Ms. Brown, do you agree, first of all, that under Arizona and Baum, that strict scrutiny is the standard we look at for a mistrial in the event of a missing witness or unavailability of witnesses? Do you agree with that? Yes, sir. Okay, what does that mean? It is within the sliding scale of review. It's not within, it's on one of the most severe side of the scale, correct? It is a portion of that scale, and it would be the most severe side. Yes, that is correct. What does that mean? Well, it is a little unclear from United States Supreme Court precedent, and I will agree with that, but it is a discretionary ruling, and then when a reviewing court goes to the discretionary ruling, there is a range of scrutiny that should be undertaken to determine whether it's an abuse of discretion. So it would be strict. It would be detailed, which again goes to my point that it's an attractive argument to say Monday she wasn't there, but it's not a weighty argument depending on how this trial went forward. Does the trial court have to identify whether or not there are less severe alternatives and discuss why they're not? No, sir, not in the order. That is directly in Arizona versus Washington where the United States Supreme Court said that was error, actually for the district court, and I think it was in Arizona district court, and the Ninth Circuit. They said, oh, there's no evidence in the order, and the United States Supreme Court, taking a different section in the opinion actually said there is no reason or need to articulate on the record all those factors. Let me follow up on that because I appreciate that language and I'm familiar with it, but Arizona didn't deal with a strict scrutiny type of situation, I don't think, and our president, Schaefer, found that it was an error under the abuse of discretion standard for a district court not to consider that. What's your position on why those things don't control this case? Sure. Well, in Schaefer, what we had was a self-inflicted wound. That's what the court said, that there was discovery that was due that was not timely given, and that caused the problem. There is no state action in this particular case. Impaneling the jury when your witness isn't there. That's the rolling the dice that occurred here. That's the state action. We would disagree, and I believe that Judge Cooper was correct in going through and looking and saying both sides are saying the witness is available, not just the state, both sides. Okay, let's get on to Thursday. So Thursday we know that the witness can't be found. Why don't we have anything in this record that shows that the judge considered whether to continue the case to Monday, the obvious alternative in the case? We have no discussion or consideration or articulation of alternatives. That's the obvious alternative as a trial judge. Well, that is not an alternative that is in any of the suggestions. It was not suggested by defense counsel. It was not suggested by the court. You're saying the judge doesn't have the obligation to consider alternatives? He has an obligation to consider viable alternatives, and the district court was very good at looking at what were the viable alternatives that could arise in this situation, and he recognized the possibility of two, but he discounted both of them because of the way that the case had developed. This was a very slow and deliberate approach to finding manifest necessity. What was slow and deliberate about declaring a mistrial 24 hours after you tried to find the witness? The element of surprise and the termination of the surprise, the substantial efforts expended to try to find some indication of this witness, and I believe that opposing counsel touched on this earlier. This is not a case that we thought this person would be hesitant and would flee. She had cooperated in another case. She had been cooperative before this time. Let me ask you this about trial procedure. I was a trial lawyer, and the subpoenas we always issued were for the week of the trial, and when the witness was due, we'd call the witness, and the witness would come in. I can't ever recall witnesses all showing up on the day the jury's picked. Yes, sir, and that's customary in South Carolina. But prosecutors do that to make sure their witnesses come to court, don't they? In South Carolina. My understanding is, and I am more of an appellate attorney, but my understanding is everybody wants to move a case along. Now, when I'm in trial court, that's what I do. I give a subpoena to my witness. Here's the week we're going to have a post-conviction relief hearing. I will call you when we are getting ready to put you on. That's my experience, and the question is they call that person on Wednesday, right? Right, exactly, and there was, in this case, there was a text sent. But they expected her to be there. They expected her to be there. And so on Tuesday, they started hunting. That is correct. They sent her a text, and she didn't show up, and then they reported that to the court on Wednesday. Well, one witness testified, then there was a suspension of the receipts. What did the defense lawyer say about her availability? And that's what I had mentioned before. The defense attorney, he spoke to the witness on Sunday before the week of trial, and that's in the joint appendix on page 403, and that was the assertion. What he's saying, my question is, what did he say to the court? That was what he said that he had spoke to. He confirmed that he had spoken to the witness the Sunday before the trial began. And that's it? Mm-hmm. He didn't say that the witness would be available? He didn't say anything about availability. She just was there and available to talk to. And that is in keeping with what the state believed, and that was that she would show up when she was called. And it's very important, I think, to consider that Judge Cooper looked at what the defense was saying and looked at what the state was saying. I can't remember on this, so maybe I'm wrong, but didn't the prosecution begin to start looking for her on Monday when she didn't show? No, sir. There was no effort by the prosecution on Monday to say, you're not here, so let me go try to find you. That started on Tuesday, is that right? No, sir, and that's supportive that they didn't expect for her to be there. So just let me make sure I understand, because I don't remember the details of this. On Tuesday is when the prosecution reached out to her to try to find her? It's in a text. It's my understanding to say, you've got to be in court on Wednesday. She was not there. Is the substance of the text, that's what it says? That was what was represented by the solicitor, yes. You need to be in court. Well, that's meaningful, isn't it? That's exactly the practice that I was just asking about. That's exactly the practice, yes, sir, absolutely. And then when she did not show up is when things became very uncertain. And I will point the court to the joint appendix when all of this is happening. Judge Cooper doesn't see this as a witness who decided not to show up. Judge Cooper says, I'm dealing with the unknown. There was the possibility at that time that something could have physically happened to the witness. We didn't know. It could have been an accident. It could have been intentional. We didn't know what had happened. Why wouldn't that have been a reason to continue the case? And that's why there was a break in the proceeding. Right, and I'm saying why wouldn't that have been a reason to continue, the obvious reason to continue the case until the Monday? That flows into what the district court was saying. The district court was saying, look at what the information that the circuit court had at that time. And Judge Cooper knew that the marshals had gone out to try to find some indication of where she was. They had no leads. It's not like we had a cell phone. People had not seen her. There were no leads to be able to get to her. But why wouldn't you continue it even one more day to see what happened as opposed to declare mistrial or at least consider whether that was a viable option? Yes, Your Honor, and when we look at it again, and this goes into the district court again, well, why couldn't you have done that? Why not put up more witnesses? Well, the suggestion is that we had some 18, but defense counsel at the motion hearing actually said there are only three or four, and they had a roadmap of what the state was going to do because they had the Howard transcript. So only three or four. So if we tease this out like we were teasing out the Monday arrival, if we tease this out, okay, well, Wednesday, this case is moving at a good clip. They heard eight witnesses on Tuesday and one on Wednesday. Let's say we put up three or four. Well, then you have the afternoon. Is it better to grant then? Well, then we have Thursday morning. Is it better to grant Thursday afternoon? Or we have Friday morning. So the judge was looking at this. We have no leads. We do not have any idea. I would think that the judge hearing that the marshals had tried to find them as opposed to just the prosecutor, if the prosecutor said we tried, the obvious thing is to postpone, but the marshals come back and said we went out to try to find her. We couldn't find her. That's a little more finality. Yes, sir, and it's the sheriff's department and the U.S. marshals. Sheriff's department went out to? The sheriff's department coordinated with the marshals. This was significant resources being expended to try to find some lead, some lead. Not some lead, to find her. We would prefer to find her. Well, the record doesn't show exactly what was done, though, right? It doesn't. It seems to me you're kind of embellishing a little here about significant resources. We don't know what they did. We don't know if they tried to telephone her. We don't know if they showed up at one place and looked for her. We don't know. I believe that the marshal services contacted that they expend significant resources. I think it's a fair reading of that information. But, again, we have to look at the actual context, not just the text of the judge's order, but the context of that order. And that's what is incredibly important and what led the judge to find manifest necessity here. And the district court was absolutely right. This is not a matter of... Do you have a record reference to the page where the text was reported to the court? It is reproduced in the district court's order at page 531 of the joint appendix. And it references, it's very important that text references, that her decision is made within around three days. That means that week. That means... What are you saying? What references? The text that Ms. Grant reportedly sent and was received about not coming references three days that she had been through emotional distress over three days. No, no, no. I'm talking about the text sent to her to report. That text, I'm not aware that that's in the record. I thought you said the prosecutor reported that to the court. She did. That's what I'm interested in. If you know. I do not know off the top of my head. It is in, I believe, the suspension of the proceedings. So it should be somewhere around the joint appendix at 407 because that's where the judge said I am dealing with an unknown. All right. And we would respectfully request that this court affirm the district court order. Thank you. Thank you. All right, Mr. Luck. Mr. Luck, I have a question for you as you begin. Yes, Your Honor. It's probably no surprise to you that I think that the prosecutors rolled the dice in this case very clearly. But on the other side of the equation, we have a murder case. To what extent are we required to consider that, the gravity of the offense? How does that fit into our calculus? I have not found any case law that stands for the proposition of the gravity of the offense. The gravity of the offense somehow reduces the protections of the United States Constitution. It is a murder, and that is terrible. Right. No, I meant in terms of the declaration of manifest necessity. Oh, in that? Because the prosecutor, in my view, is clearly rolling the dice. The witness wasn't there. But when the judge is considering manifest necessity, to what extent do you consider the fact that this is a murder trial and the citizens of the state also have a right to have this person tried? How does that go into the mix? I don't think it factors into the significant amount, but the citizens of the state also have a right to have a fair prosecution, and that's what is not being granted here. So it's a balancing act, yes. But that's part of the balance, right? I think that's what Judge Keenan is saying. We understand your issues on this, but is a factor the severity of the crime in the public's interest in seeing a trial on that crime? The short answer is no, in my opinion. There's no public interest consideration? There's a public interest in consideration of a fair trial of all trials. All trials should be fair and just. Do you agree that our review of the district court's order in terms of finding a surprise is clear error? Clear error doesn't sound quite the same as strictest scrutiny. I don't think it is a clear error issue. This is a strictest scrutiny issue, if that makes any sense. If I'm looking at Arizona v. Washington and I look at Baum and the other cases at its sites, especially Baum, you're looking at this and that's the lens you view this through is the strictest scrutiny, which I guess we can go back to what your earlier question was. It segues nicely into it. Strictest scrutiny, like I mentioned earlier, I believe is something that requires the court to really get under the hood and see why. What is the why here? It is to examine the motivations in a little bit, in some ways, maybe even get into the head of the prosecutor involved. Look deep into the record. As opposed to something on the other end of the continuum, which I believe the Baum case has called a sound discretion review, which would be something for, say, a non-essential witness or missing evidence that's non-essential. That has some factors to follow and it seems pretty easy to follow through. That's sort of the next level down the continuum. I guess the very end of the continuum is great deference, and that is, for example, a home jury, mistrial due to home jury. We're on the other end of this, the other end of the pendulum. What's your position on the way the Fifth Circuit has interpreted strictest scrutiny? Do you think that's a appropriate standard for us to consider? I think, at least in terms of this case, it's fair to consider that. You're definitely not bound by it. I think that it's definitely worth considering. They said that means, at a minimum, considering the alternatives, correct? Correct. They factor in, in some ways blend in some of the sound discretion analysis into that, saying that there has to be a consideration of alternatives. There has to be a, I think it was an extensive argument, deliberate investigation of why. I think when you're dealing with something here where, why is it that a missing witness is so important? Why is it given such high scrutiny? Was a continuance a viable alternative at the time of the decision, in your view? Yes, absolutely. Did you ask, did the defense ask? I don't think, did the defense say, we want it to be continued rather than mistrial? No, I don't believe the trial counsel did specifically ask for that, but that does not excuse the trial court from considering all alternatives. They must. And I know we're looking with the benefit of hindsight, but had they just continued it one day, this witness would have been secured. Yeah, that's what I mean. Yeah, that's hindsight's 20-20, I'm afraid. I just want to go back to something I harked on earlier, but I'm out of time, so if there's any other questions. Thank you, Your Honor. Thank you. We'll adjourn court for the day and come down to brief counsel. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Paul V. Niemeyer, Barbara Milano Keenan, A. Marvin Quattlebaum Jr.